**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JESSICA VEGA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONOPCO, INC., individually and as successor by merger to KENSINGTON & SONS, LLC<br><br>Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jessica Vega ("Plaintiff") brings this action individually, and on behalf of all others similarly situated against Defendant, Conopco, Inc. ("Conopco" or "Defendant") Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations pertaining to herself, which are based upon her personal knowledge.

## NATURE OF THE ACTION

1. This class action concerns Sir Kensington's avocado oil-based products, which have been independently laboratory-tested and found to be compositionally inconsistent with authentic avocado oil.

2. The specific product purchased by the Plaintiff and that was the subject of the testing is Sir Kensington's Avocado Oil Mayonnaise (the "Product"). The Product's principal front display identifies the Product by the name "Avocado Oil Mayonnaise" with "Avocado Oil" set in large, prominent text and the ingredient statement declares avocado oil as the sole fat or oil in the Product. Separately, Defendant represents on its website and in retail product listings that the Product is made with "100% avocado oil" (together, the "Avocado Oil" Representation). A

purchaser reading that Avocado Oil Representations will conclude two things: 1) that the Product contains avocado oil; and 2) that avocado oil is the only fat or oil the Product contains.

3. Neither proposition holds, according to independent laboratory analysis. In July 2026, food chemists at the University of California, Davis published the first peer-reviewed study examining whether the premium oils named on the labels of finished, commercially processed foods correspond to the oil actually present in those foods – a question the authors observed had received little attention, because prior work had focused on bottled oils sold directly to consumers.[1] The UC Davis Study (the "Study") asked what is inside the package after the oil has been fried, emulsified, or blended into a finished food.

4. The answer as to avocado oil, was that the label frequently does not accurately describe the contents. Of the 54 avocado-oil-labeled products analyzed, 48 — eighty-nine percent — exhibited fatty acid and sterol profiles that the Study classified as inconsistent with authentic avocado oil.[2] Within the mayonnaise category, the category into which the Product falls, 10 out of 14 products tested (71%) were classified as inconsistent.[3]

5. The Product was among the products the Study analyzed. For each product, the Study purchased and analyzed two independently obtained production lots of each product, each in duplicate, and reported the complete measured fatty acid profile of every sample in and the complete measured sterol profile of every sample. Both lots of the Product were classified as inconsistent with authentic avocado oil.

---

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.
[2] *Id.*
[3] *Id.*

6. The Study's finding as to the Product was neither equivocal nor confined to a single measurement: both independently purchased production lots of the Product were classified as inconsistent with authentic avocado oil and instead exhibited the fatty acid pattern most diagnostic of seed oil substitution.

7. The deviations the Study reported for the Product are not random. Each of Defendant's samples follow the same pattern the Study's authors identified as characteristic of substitution or dilution with cheaper commodity oils: depressed palmitic acid, depressed palmitoleic acid, and depressed cis-vaccenic acid, together with elevated stearic acid, campesterol, stigmasterol, and delta-7-avenasterol. These findings do not occur in authentic avocado oil. They occur when authentic avocado oil is replaced or extended with other seed oils.

8. Avocado oil costs meaningfully more than soybean, canola, sunflower, or safflower oil, and manufacturers and retailers that name it on the front of a package charge a premium for it. Plaintiff and the members of the proposed Class paid that premium. They did not receive what was purchased.

9. Plaintiff brings this action under California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law, and under the common law of express warranty and unjust enrichment, to recover the premium and to stop the practice.

**PARTIES**

10. Plaintiff Jessica Vega is a natural person who at all relevant times resided in and was a citizen of Reseda, California.

11. During the Class Period, Plaintiff Vega purchased Sir Kensington's Avocado Oil Mayonnaise jar for personal and household consumption from retailers such as Food 4 Less, Target and Vallarta in and around Reseda, California on multiple occasions throughout 2026, including

most recently on or about September 3, 2026, at a price of approximately $11 to $16 per jar. Plaintiff regularly purchased the Product as part of her household's routine grocery shopping.

12. Before each purchase, Plaintiff Vega saw and read the Product’s front label, including its identification of the Product as "Avocado Oil Mayonnaise." Plaintiff understood that statement to mean that the sole oil in the Product was avocado oil. That understanding was material to her decision to buy the Product and to pay the price Defendant charged for it.

13. Had Plaintiff Vega known that the Product's oil fraction was compositionally inconsistent with authentic avocado oil and reflected substitution or dilution with undisclosed seed oils, she would not have purchased the Product or would have paid substantially less for it. Plaintiff would purchase products containing pure avocado oil if it were an option.

14. Plaintiff Vega did not receive the benefit of her bargain and suffered economic injury in the amount of the premium she paid for an avocado-oil-labeled Product that did not, in fact, contain the represented ingredient to the extent claimed.

15. Defendant Conopco, Inc., is a New York corporation with its principal place of business at 111 River Street, 8th Floor, Hoboken, New Jersey 07030, in this District. Conopco, Inc. is the principal United States operating subsidiary of Unilever United States, Inc., a Delaware corporation, and conducts Unilever's United States foods and refreshment businesses.

16. Upon information and belief, the Sir Kensington's line of condiments, including the Product, was developed and sold by Kensington & Sons, LLC, a Delaware limited liability company formed in or about 2011. In 2017, Unilever acquired the Sir Kensington's business, and Kensington & Sons, LLC thereafter operated as an indirect wholly owned subsidiary within the Unilever group of companies.

17. On November 24, 2025, Kensington & Sons, LLC merged into Conopco, Inc. Kensington & Sons, LLC was the non-surviving entity in that merger and Conopco, Inc. was the survivor. Kensington & Sons, LLC ceased to exist as a separate legal entity on that date, and its status in the records of the Delaware Secretary of State is "Merged."

18. By operation of that merger, the property, rights, privileges, debts, liabilities, and duties of Kensington & Sons, LLC vested in and attached to Conopco, Inc., and may be enforced against Conopco, Inc. to the same extent as if Conopco, Inc. had incurred them. Conopco, Inc. is accordingly liable for the conduct alleged in this Complaint both directly, as to the period from November 24, 2025 forward, and as successor by merger to Kensington & Sons, LLC, as to the period before that date.

19. At all times during the relevant period, Conopco, Inc., whether acting on its own or through Kensington & Sons, LLC before the merger, formulated, specified, sourced, labeled, marketed, distributed, and sold the Sir Kensington’s line of branded condiments, including the Product, whether directly or through contract manufacturers and co-packers acting at its discretion and under its specifications. Defendant Conopco controls the content of the Product's packaging, its front-of-package claims, and its ingredient statement.

## JURISDICTION AND VENUE

20. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The proposed Class comprises far more than 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and minimal diversity exists because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District.

22. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant regularly transacts business in this District and is subject to personal jurisdiction in this District. Additionally, Defendant maintains its principal place of business in this District and a substantial part of the events giving rise to Plaintiff's claims – including the formulation of the Product, the specification and sourcing of the oil used in it, and the creation and approval of the challenged labeling and marketing – occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Avocado Oil Representation is Material to Consumers and Demands a Price Premium

23. The Avocado Oil Representation is material to consumers' decisions to purchase the Product, and consumers pay a price premium for it.

24. Avocado oil is marketed and sold as a premium edible oil, valued for its high concentration of monounsaturated fats and its perceived nutritional advantages over conventional seed and vegetable oils.

25. These qualities motivate consumers who are seeking to avoid other seed oils to pay a premium price for products made with avocado oil as compared to products made with alternative, cheaper, oils. For those consumers the presence of an undisclosed seed oil is not a difference of degree or grade; it defeats the purpose of the purchase entirely. Defendant markets the Product to precisely that consumer segment.

26. Avocado oil is materially more expensive to source than seed oils such as soybean, canola, sunflower, safflower, and corn oil. Manufacturers—including Defendant—have accordingly marketed processed foods as made with avocado oil in order to command a price

premium over conventional seed-oil counterparts. The UC Davis Study found that avocado-oil- and olive-oil-labeled products commanded higher retail prices than their vegetable-oil counterparts. For example, avocado oil mayonnaise cost $0.30-$1.63 per ounce versus $0.24-$0.75 per ounce for vegetable oil mayonnaise.[4]

27. Defendant's own line illustrates the premium: Defendant sells Classic Mayonnaise made with sunflower oil alongside the Product and prices the Product above it.

28. Consumers have no practical means of verifying which oil is present in a finished, processed food. Detecting substitution requires solvent extraction of the lipid fraction followed by gas-chromatographic analysis of fatty acid methyl esters and sterols against international reference standards—laboratory work no ordinary consumer can perform. Refined avocado oil and refined seed oils are similar in color, texture, and flavor, so the substitution cannot be detected by taste, appearance, or use.

29. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Product reasonably expect to know what type of oil they are consuming. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims

[4] *Id.*

. . . to be the primary lipid source of the product."[5] Consumers purchased, and continue to purchase, the Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with avocado oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased it at all, if not for the Avocado Oil Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium.

**B. Defendant's Product and Its Representations**

30. The Product is sold in a jar or squeezable bottle whose principal display panel bears the product name "Avocado Oil Mayonnaise" with "Avocado Oil" prominently displayed:




31. The Product's ingredient statement discloses no fat or oil other than avocado oil, which is listed first, as the predominant ingredient by weight. The only other ingredient determined as an "oil" is lime oil, a flavoring essential oil present in trace quantity that is not a source of dietary fat. The ingredient statement contains no qualifying or hedging disclosure—such as

[5] *Id.*

"and/or," "may contain," or a reference to trace or incidental ingredients—that would put a reasonable consumer on notice that a fat or oil other than avocado oil might be present.[6]

32. A reasonable consumer who reads "Avocado Oil Mayonnaise" on the front of the package, sees Defendant's representation that the Product is made with "100% avocado oil," and then finds "Avocado Oil"—and no other fat or oil—in the ingredient statement, reasonably understands that the oil in the Product is avocado oil.

33. Defendant's marketing reinforces the labeling representation. On its own website and in retail product listings for the Product, Defendant represents that the Product is made with "100% avocado oil." Defendant markets its mayonnaise line by reference to the particular oil used in each variety — distinguishing, for example, the sunflower oil used in its Classic Mayonnaise from the expeller-pressed avocado oil it represents is used in the Product — and promotes the quality of those oils as a reason its products are worth their price.[7]

> Can we make an avocado oil mayo as creamy and flavorful as our Classic Mayo? We can, and we did. Can we fit, not one but two avocado puns in one product description? Only one way to find out: This mayo hass it all! Paleo and Keto certified, 100% avocado oil, and bright and savory notes for an unexpected AVO-lanche of flavor.

34. Unfortunately for Plaintiff and the Class Members, the oil in Defendant's Product is not authentic avocado oil. As set forth below, peer-reviewed laboratory testing established that

[6] https://www.instacart.com/products/23789599-sir-kensington-s-avocado-oil-mayonnaise-16-fl-oz?csr=true&irgwc=1&afsrc=1&utm_source=instacart_impact&utm_medium=affiliate&utm_term=partnertype-mediapartner_adtype-ONLINE_TRACKING_LINK_adname-Online%20Tracking%20Link&utm_campaign=partner-SPINS%20LLC&utm_content=clickid-3zp1tvWPYxyZTLJxq-V8Uz1JUkr2BuSFW3d%3ARU0_campaignid-7412_partnerid-392844_adid-413183_sharedid-6aa055f7818da4bc2b0a4cb9&traff_category=.
[7] https://www.sirkensingtons.com/us/en/p/avocado-oil-mayonnaise.html/00850551005951.

the oil extracted from the Product is compositionally inconsistent with authentic avocado oil and instead exhibits the compositional profile characteristic of cheaper, refined seed oils. The Avocado Oil Representation is therefore false and misleading.

**C. The UC Davis Study's Design and Findings**

35. Although the Product is advertised as containing avocado oil and no other fat or oil, its oil fraction is compositionally inconsistent with authentic avocado oil.

36. The 2026 UC Davis Study evaluated the authenticity of avocado oil and olive oil used as the sole declared oil in consumer foods. The Study analyzed 54 avocado-oil-labeled products and 20 olive-oil-labeled products – chips, mayonnaise, and salad dressings purchased from retail and online sources in California in 2025 and 2026. Two separate production lots of each product were purchased, and each lot was analyzed in duplicate. The Product was among the products tested.

37. Researchers extracted the oil fraction from each product—by Soxhlet extraction with n-hexane for chips, and by freeze-thaw centrifugation for mayonnaise and dressings—then analyzed the FAME profile and the sterol profile of each extract by gas chromatography with flame ionization detection, and compared the results against the compositional ranges for authentic oils in the Codex Standard.

38. The Study's classification methodology was deliberately conservative and favorable to manufacturers. A deviation limited to a single fatty acid or sterol marker and not exceeding 10% beyond the applicable Codex limit was disregarded entirely, and the sample treated as consistent. A sample with no more than two markers marginally exceeding that allowance, and without concordant deviations across other markers, was treated as merely "borderline"—and where a sample was fully consistent in one profile and borderline in the other, it was counted as

consistent. Only samples exhibiting multiple deviations, or patterns inconsistent with authentic reference profiles, were classified as inconsistent.

39. The Study found that samples classified as inconsistent with authentic avocado oil consistently exhibited reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 (n-7)), together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, and $\Delta^7$-avenasterol — a chemical signature the Study's authors identified as characteristic of substitution or dilution with lower cost vegetable and other seed oils rather than authentic avocado oil.

40. The Study identified cis-vaccenic acid as a strong discriminatory marker for avocado oil authenticity. Products classified as consistent had a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids; while products classified as inconsistent had a mean of 1.7% ± 0.5%—a range aligning with typical vegetable oil profiles ($p < 0.001$).

41. Of the 54 avocado-oil-labeled products tested, 48—89%—were classified as compositionally inconsistent with authentic avocado oil: 93% of chips, 100% of salad dressings, and 71% of mayonnaise. By contrast, only one of the 20 olive-oil-labeled products in the same categories was classified as inconsistent, and every olive-oil labeled mayonnaise was classified as consistent. Because the olive-oil-labeled products were subjected to identical extraction and analytical procedures in identical food matrices, the widespread inconsistency among avocado-oil-labeled products cannot be attributed to testing artifacts, ordinary manufacturing variability, or limitations inherent in recovering oil from processed foods.

42. The Study further found that retail price was not a reliable indicator of authenticity: products labeled with avocado oil commanded a price premium over vegetable-oil counterparts

regardless of whether their oil fraction was actually consistent with authentic avocado oil, meaning that consumers could not protect themselves from adulteration by paying a higher price.

43. The Study also tested, and excluded, the explanation that processing rather than substitution accounts for the deviations. The researchers prepared control samples using authentic retail avocado oil — frying chips at 180°C and preparing mayonnaise from scratch — and then re-extracted and analyzed the oil. The key fatty acid and sterol authenticity markers remained largely unchanged. Emulsification, the process by which the Product is made, shifted fatty acid values by no more than 0.3 percentage points and sterol values by no more than 0.5 percentage points, far less than the deviations observed in the avocado-oil-labeled mayonnaise products the Study classified as inconsistent.

**D. The Study's Sample-Specific Findings as to Defendant's Product**

44. In the product information accompanying the Study, Defendant's Product is identified as Sample Nos. 63 and 64.[8]

45. The Study classified both lot samples of the Product as inconsistent with the composition of avocado oil.[9]

46. The oil in the Product is therefore not authentic avocado oil, or at a minimum, is not solely avocado oil, having been substituted with or extended by other, cheaper oils.

47. The Study's findings reflect Defendant's sourcing, specification, and quality-control practices rather than any isolated event. Upon information and belief, the substitution or dilution of the declared avocado oil occurred before the Product left Defendant's control —whether in the bulk oil Defendant sourced or specified for the Product, at the contract manufacturer or co-

[8] UC Davis, Studied Products AFRES, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/deta ils.
[9] *Id.*

packer that products the Product to Defendant's specifications. That the Study tested two independently purchased production lots, obtained on different occasions, and classified both as inconsistent with authentic avocado oil supports the inference that the deficiency is not a one-off anomaly confined to a single lot but a systemic feature of how the Product is formulated and supplied, affecting the lots sold throughout the Class, including those Plaintiff purchased

48. Defendant knew or should have known that its marketing and labeling of its Product is misleading to consumers. Adulteration of avocado oil has been publicly documented since at least 2020.

49. In 2020, researchers at UC Davis published the first report on the quality and purity of avocado oil sold in the United States, finding that a substantial majority of the bottled avocado oil products tested were either oxidized or adulterated with other oils. In 2022, the same laboratory identified cis-vaccenic acid (C18:1 (n-7)) as a specific analytical marker capable of detecting seed oil adulteration in avocado oil. In 2023, the same laboratory published further findings on the purity and quality of private-label avocado oil.

50. Defendant is a sophisticated food manufacturer with access to analytical testing capability, supplier-qualification programs, and quality-control resources. In light of the published and publicized history of avocado oil adulteration, Defendant knew or should have known of the substantial risk that bulk avocado oil purchased for use in the Product would be diluted or substituted, and had both the means and the obligation to verify the authenticity of the oil it declared on its labels. Defendant either failed to conduct such verification or conducted it and sold the Product anyway.

51. Plaintiff and the Class read and reasonably relied upon Defendant's representations that the Product they purchased contained avocado oil as the sole oil ingredient. Plaintiff and the

Class reasonably understood these representations to mean that the Product's oil fraction was, in fact, composed of authentic avocado oil, and Plaintiff paid a price premium for the Product on that basis.

52. Had Defendant disclosed that the Product's oil fraction was inconsistent with authentic avocado oil and instead reflective of undisclosed substitution or dilution with cheaper seed oils, Plaintiff and Class members would not have purchased the Product, or would have paid substantially less for it. Plaintiff did not receive the benefit of her bargain and suffered economic injury in the amount of the premium she paid for the avocado-oil-labeled Product that did not, in fact, contain the represented ingredient to the extent claimed.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the following proposed classes:

> **Nationwide Class:** All persons in the United States who purchased the Product during the applicable statute-of-limitations period preceding the filing of this action through the date of class certification (the "Class Period").
>
> **California Subclass:** All persons who purchased the Product in the State of California during the Class Period.

54. Excluded from the proposed classes are: Defendant and its officers, directors, members, employees, and affiliates; any entity in which Defendant holds a controlling interest; the judicial officers and court personnel assigned to this case and their immediate families; and any person who timely and validly requests exclusion.

55. Numerosity. The members of each proposed class are so numerous that joinder is impracticable. The Product is a nationally distributed retail grocery item sold through national and regional grocery chains, mass retailers, and online grocery and delivery platforms, and and upon information and belief Defendant has sold hundreds of thousands of units during the Class Period.

The precise number of Class members is presently unknown to Plaintiff but can be determined from Defendant's records.

56. Commonality and Predominance. Common questions of law and fact predominate over individual questions, including:

a. whether the Product is compositionally consistent with authentic avocado oil;

b. whether the Product contains one or more undisclosed edible oils other than avocado oil;

c. whether the representation that the Product is made with avocado oil, and the declaration of avocado oil as the sole edible oil, are false or misleading to a reasonable consumer;

d. whether those representations were material;

e. whether Defendant knew or should have known, in light of the published literature on avocado oil adulteration and its own sourcing and quality-assurance obligations, that the representations were false or misleading;

f. whether Defendant's conduct violates the CLRA, FAL, UCL and the warranty and unjust enrichment doctrines invoked here;

g. whether the representations caused Plaintiff and the Class to pay a price premium; and

h. the nature and scope of the relief to which Plaintiff and the Class are entitled.

57. Typicality. Plaintiff's claims arise from the same course of conduct, rest on the same representations appearing on the same packaging, and are premised on the same legal theories as the claims of the members of the proposed classes.

58. Adequacy. Plaintiff has no interests antagonistic to those of the proposed classes and has retained counsel experienced in consumer class action and food-labeling litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the classes.

59. Rule 23(b)(2). Defendant has acted on grounds generally applicable to the proposed classes, making final injunctive and corresponding declaratory relief appropriate on a classwide basis, including an order requiring Defendant to cease representing that the Product is made with avocado oil unless and until that representation is accurate.

60. Rule 23(b)(3). A class action is superior to other available methods for adjudicating this controversy. The individual recovery available to any single purchaser is small relative to the cost of individual litigation, few class members could reasonably be expected to sue on their own, and concentrating the claims in this forum will conserve judicial and party resources and avoid inconsistent adjudications.

61. Ascertainability. The proposed classes are defined by objective criteria — purchase of an identified retail product during a defined period — and membership can be determined determined by a reliable and administratively feasible method that does not require individualized fact-finding or mini-trials. Records exist from which membership can be established, including: Defendant's shipment, sales, and distribution records identifying the retailers to which the Product was sold and the volumes shipped; retailer point-of-sale and loyalty-account transaction data, which for grocery purchases routinely identify the purchaser, the item purchased by UPC, the date, and the price paid; order histories maintained by the online grocery, e-commerce, and delivery

platforms through which the Product is sold; and class members' own receipts, credit and debit card records, and retained packaging.

## CAUSES OF ACTION

### COUNT ONE
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750 et seq.**
**(On Behalf of Plaintiff Vega and the California Subclass)**

62. Plaintiff Vega realleges and incorporates each preceding paragraph.

63. The Product is a "good" within the meaning of California Civil Code § 1761(a). Plaintiff Vega and the members of the California Subclass are "consumers" within the meaning of § 1761(d), and their purchases are "transactions" within the meaning of § 1761(e). Defendant is a "person" within the meaning of § 1761(c).

64. By representing on the Product's label that the Product is made with avocado oil and by declaring avocado oil as the sole edible oil ingredient, when the Product's lipid fraction is inconsistent with authentic avocado oil, Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of, at minimum:

a. Cal. Civ. Code § 1770(a)(5), by representing that the Product has characteristics and ingredients that it does not have;

b. Cal. Civ. Code § 1770(a)(7), by representing that the Product is of a particular standard, quality, or grade when it is of another; and

c. Cal. Civ. Code § 1770(a)(9), by advertising the Product with the intent not to sell it as advertised.

65. Defendant's representations were material. A reasonable consumer would attach importance to whether the oil in a food is the oil the label names, particularly where the named oil

commands a premium and where a substantial segment of purchasers is seeking to avoid the substituted category of oil.

66. Plaintiff Vega and the members of the California Subclass relied on Defendant's representations, and that reliance caused them to purchase the Product and to pay more for it than they otherwise would have.

67. Plaintiff Vega presently seeks injunctive relief under the CLRA to enjoin the unlawful acts and practices described herein pursuant to § 1780.

68. On September 9, 2026, prior to filing, Plaintiff Vega, through counsel, sent Defendant written notice by certified mail, return receipt requested, addressed to Defendant's principal place of business, identifying the particular violations of California Civil Code § 1770 alleged herein and demanding that Defendant correct, repair, replace, or otherwise rectify the Product. Defendant failed to do so within thirty days.

69. Plaintiff Vega and the California Subclass are entitled to injunctive relief and, upon expiration of the statutory notice period and amendment, to damages, restitution, punitive damages, and attorneys' fees and costs under California Civil Code § 1780.

**COUNT TWO**
**Violation of the Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiff Vega and the California Subclass)**

70. Plaintiff Vega realleges and incorporates each preceding paragraph.

71. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.

72. Unlawful. Defendant's labeling and marketing of the Product violate, among other provisions, 21 U.S.C. § 343(a)(1); 21 C.F.R. § 101.4(a)(1); and the CLRA and FAL provisions invoked in this Complaint. Each supplies a predicate for liability under the unlawful prong.

73. Unfair. Defendant's conduct offends the public policy embodied in the federal and California food-labeling statutes cited above; causes substantial injury to consumers that they could not reasonably have avoided, since the substitution is undetectable at the point of sale and by ordinary use; and produces no countervailing benefit to consumers or to competition. To the contrary, it disadvantages competitors that source and pay for authentic avocado oil.

74. Fraudulent. Defendant's representations were likely to deceive, and did deceive, reasonable members of the consuming public.

75. As a direct and proximate result, Plaintiff Vega and the California Subclass lost money or property and are entitled to restitution, injunctive relief and all other relief under Cal. Bus. & Prof. Code § 17203.

**COUNT THREE**
**Violation of the False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500 et seq.**
**(On Behalf of Plaintiff Vega and the California Subclass)**

76. Plaintiff Vega realleges and incorporates each preceding paragraph.

77. The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

78. Defendant disseminated, and caused to be disseminated, statements concerning the Product — on its packaging and in its marketing — that were untrue or misleading, and that Defendant knew, or in the exercise of reasonable care should have known, to be untrue or misleading.

79. The misrepresentation by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, et seq.

80. Defendant's knowledge or constructive knowledge is established by the published scientific literature documenting avocado oil adulteration; by Defendant's supplier-qualification and quality-assurance responsibilities as the owner of the brand appearing on the package and the entity that specifies the Product's formulation; and by the analytical testing capability available to a food manufacturer and distributor of Defendant's scale and resources.

81. Plaintiff Vega and the California Subclass relied on those statements, purchased the Product, and lost money as a result. They are entitled to restitution and injunctive relief under Cal. Bus. & Prof. Code § 17535.

82. Plaintiff Vega lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff Vega fails to sufficiently adduce evidence to support an award of damages.

83. Equitable relief is also appropriate because Plaintiff Vega may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined

to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff Vega and the Members of the Classes would be left without the parity in purchasing power to which they are entitled.

**COUNT FOUR**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class, or Alternatively the Subclasses)**

84. Plaintiff realleges and incorporates each preceding paragraph.

85. Defendant's representations that the Product is "Avocado Oil Mayonnaise," and is made with “100% avocado oil,” together with its declaration of avocado oil as the sole fat or oil ingredient, are affirmations of fact and descriptions of the goods that became part of the basis of the bargain and created an express warranty that the Product would conform to those affirmations and descriptions.

86. The Product did not conform. Its lipid fraction is inconsistent with authentic avocado oil and reflects substitution or dilution with undisclosed seed oils. Defendant thereby breached the express warranty.

87. As a direct and proximate result of the breach, Plaintiff and the Class did not receive the benefit of their bargain and suffered damages in the amount of the purchase price or the difference in value between the Product as warranted and the Product as sold.

**COUNT FIVE**
**Unjust Enrichment**
**(Pleaded in the Alternative, on Behalf of Plaintiff and the Nationwide Class)**

88. Plaintiff realleges and incorporates each preceding paragraph, and pleads this Count in the alternative to the extent no adequate remedy at law is available.

89. Plaintiff and the Class conferred a benefit on Defendant in the form of the purchase price of the Product, including the premium attributable to the avocado oil representation. Defendant knew of and accepted that benefit.

90. Defendant voluntarily obtained and retained that benefit. Under the circumstances, it would be inequitable for Defendant to retain the premium without compensating Plaintiff and the Class in light of the unlawful misrepresentation.

91. Plaintiff and the Class are entitled to restitution and disgorgement of the amounts by which Defendant was unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, respectfully requests that the Court enter judgment as follows:

A. Certifying the proposed Nationwide Class and California Subclass under Rule 23, appointing Plaintiff as class representatives, and appointing Plaintiff's counsel as class counsel;

B. Declaring that Defendant's labeling and marketing of the Product violate the CLRA, the UCL, and the FAL, and that Defendant has breached its express warranties;

C. Enjoining Defendant from representing that the Product is made with avocado oil, or declaring avocado oil as the Product's sole edible oil ingredient, unless and until that representation conforms to the Product's actual composition;

D. Awarding damages, restitution, and disgorgement in an amount to be proven at trial;

E. Awarding punitive damages to the extent permitted by law;

F. Awarding pre-judgment and post-judgment interest as permitted by law;

G. Awarding reasonable attorneys' fees, expenses, and costs, including under Cal. Civ. Code § 1780(e) and any other applicable authority; and

H. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 10, 2026

By: */s/ Alex Kashurba*
Alex M. Kashurba (NJ ID No. 140712014)
Steven. A Schwartz*
Beena M. McDonald*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
sas@chimicles.com
bmm@chimicles.com
amk@chimicles.com

James J. Rosemergy*
**CAREY & DANIS LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 725-7700
jrosemergy@careydanis.com

Todd S. Eagan*
**EAGAN LAW CORPORATION**
401 Wilshire Boulevard, 12th Floor
Santa Monica, CA 90401
Ph: (310) 304-3302
teagan@eagan.law

* *pro hac vice forthcoming*

*Attorneys for Plaintiff and the Class*